IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00650-NYW-KLM

RMCO HOLDINGS, LLC, a Delaware limited liability company, and
ROCKY MOUNTAIN CRUDE OIL, LLC, a Texas limited liability company,

      Plaintiffs,

v.

GOLDEN TRADING & TRANSPORT, LLC, a Colorado limited liability company,
WILLIAM S. DICKEY, individually,
RODNEY HILT, individually, and
CHRISTOPHER A. HIMES, individually,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant Rodney Hilt's **Motion to Dismiss Amended Complaint Pursuant to F.R.C.P. 12(b)(1) and (6)** [#63] ("Hilt's Motion") and on Defendants Golden Trading & Transport, LLC ("GT&T") and William S. Dickey's ("Dickey") **Partial Motion to Dismiss First Amended Complaint Pursuant to F.R.C.P. 12(b)(1) and 12(b)(6)** [#65] ("GT&T's Motion"). Defendant Christopher A. Himes ("Himes") filed a Joinder [#64] to Hilt's Motion [#63] and a Joinder [#66] to GT&T's Motion [#65]; Defendants GT&T and Dickey filed a Joinder [#67] to Hilt's Motion [#63]; and Defendant Hilt filed a Joinder [#68] to Defendant GT&T's Motion [#65]. Plaintiffs thereafter filed six Responses [#69, #70, #71, #72, #73, #74], one to each Motion [#63, #65] and Joinder [#64, #66, #67, #68]. Defendants then filed Replies [#83, #84, #86] or

Joinders [#85, #87, #88] to the Replies [#83, #84, #86].   Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c), the Motions [#63, #65] have been referred to the undersigned for a recommendation regarding disposition.   *See* [#78].   The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises.   For the reasons set forth below, the Court **RECOMMENDS** that Defendant Hilt's Motion [#63] be **GRANTED** and that Defendant GT&T and Dickey's Motion [#65] be **GRANTED in part and DENIED in part**.

## I.   Background

According to Plaintiffs' detailed Amended Complaint [#47],[1] Plaintiff Rocky Mountain Crude Oil, LLC ("RMCO"):

> [I]s a provider of midstream energy services operating in Colorado, Montana, Nebraska, New Mexico, North Dakota, Texas and Wyoming, and offers crude oil transportation and logistics services to its customers. RMCO's fleet of tractors, double bottom trucks, and crude oil transport trailers moves its customers' crude oil in the major crude oil supply basins in the continental United States.   RMCO also owns and/or leases various injection stations and terminals.   In addition to providing midstream energy services and since January 1, 2016, RMCO has developed a portfolio of crude oil purchases and sales with producers and marketers located currently in North Dakota, Montana, and Wyoming.   In addition to the purchases and sales of crude oil, RMCO provides division order and distribution services to producers and others.

*Am. Compl.* [#47] ¶¶ 13-14.   Plaintiff RMCO Holdings, LLC ("RMCO-H") was formed on October 23, 2015, and was thirty percent owned by Mercuria Energy America, LLC ("Mercuria").   *Id.* ¶¶ 10-11.   "In November 2015, Mercuria agreed to purchase all of the

---

[1] All well-pled facts from the Amended Complaint [#47] are accepted as true and viewed in the light most favorable to Plaintiffs as the nonmovants.   *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

issued and outstanding membership interests in RMCO from Enterprise Crude Oil LLC," ("Enterprise") and further "agreed to transfer to RMCO-H all of Mercuria's rights to purchase the issued and outstanding membership interests in RMCO, together with all related liabilities and obligations of Mercuria to Enterprise in connection with the acquisition of RMCO." *Id.* ¶¶ 12, 15. In short, RMCO-H became the 100% owner of RMCO as a result of these transactions. *Id.* ¶ 15.

Defendant Dickey was the Chief Operating Officer ("COO") and Chief Financial Officer ("CFO") of both RMCO-H and RMCO until June 24, 2019. *Id.* ¶ 17. Defendant Himes was the Director of Corporate Development of RMCO until June 24, 2019. *Id.* ¶ 18. In addition, a Board of Managers managed the affairs of RMCO-H. *Id.* ¶ 20. Until June 24, 2019, the three managers were Defendant Dickey; a non-party, Christopher A. Helms ("Helms"), who was the President and Chief Executive Officer ("CEO") of both RMCO-H and RMCO; and Defendant Hilt, who was Vice-President—Midstream with Mercuria. *Id.* ¶¶ 16, 20.

On October 31, 2018, a limited liability company owned by Defendant Dickey and his wife acquired Defendant GT&T. *Id.* ¶ 34. Plaintiffs allege that Defendants Dickey, Hilt, and Himes "proceeded to use GT&T surreptitiously and unlawfully to misappropriate Plaintiffs' business opportunities, use money of Plaintiffs for the benefit of Defendants, deprive Plaintiffs of the honest and faithful services of RMCO employees, and take confidential and proprietary property, information and material while employed by Plaintiffs (in the case of Dickey and Himes) and while serving as a Manager of RMCO-H (in the case of Dickey and Hilt)." *Id.* The precise details of the alleged scheme, as laid

out in detail in the Amended Complaint [#47] are generally not necessary for adjudication of the Motions [#65, #67] (and, where they are, are discussed in the Analysis section below), but, in short, the individual Defendants are alleged to have been "diverting commodity purchase contracts with crude oil producers . . . from RMCO to GT&T." *Id.* ¶ 37. On June 24, 2019, RMCO terminated its employment of Defendants Dickey and Himes, and Defendants Dickey and Hilt were removed as managers of RMCO-H. *Id.* ¶¶ 17-18, 20, 37.

As a result of these allegations, Plaintiffs bring ten claims against Defendants, seeking damages: (1) Count I: fraudulent concealment, asserted by Plaintiff RMCO-H against Defendants Dickey and Hilt, *id.* ¶¶ 261-71; (2) Count II: fraudulent concealment, asserted by Plaintiff RMCO against Defendants Dickey and Himes*, id.* ¶¶ 272-82; (3) Count III: constructive fraud, asserted by Plaintiff RMCO-H against Defendants Dickey and Hilt, *id.* ¶¶ 283-91; (4) Count IV: constructive fraud, asserted by Plaintiff RMCO against Defendants Dickey and Himes, *id.* ¶¶ 292-300; (5) Count V: civil conspiracy, asserted by both Plaintiffs against Defendants GT&T, Dickey, and Hilt and by Plaintiff RMCO only against Defendant Himes, *id.* ¶¶ 301-05; (6) Count VI: unjust enrichment, asserted by both Plaintiffs against Defendants GT&T, Dickey, and Hilt and by Plaintiff RMCO only against Defendant Himes, *id.* ¶¶ 306-09;[2] (7) Count VII: civil theft regarding

---

[2] A plain reading of the Amended Complaint [#47] would indicate that Claims V and VI are also asserted by Plaintiff RMCO-H against Defendant Himes, but Plaintiffs explicitly disclaim this reading in their Response [#72], stating that "RMCO-H does not assert any claims against Himes in the FAC. . . . To the extent there is any confusion, Count V alleges a claim for civil conspiracy by Plaintiffs against Defendants based on the fraudulent concealment claim asserted in Count I (RMCO-H v. Dickey and Hilt) and the fraudulent concealment claim asserted in Count II (RMCO v. Dickey and Himes). (See FAC, Doc. #47 ¶ 301). The same is true regarding the unjust enrichment claim in Count VI (see id. ¶ 306); it seeks unjust enrichment recovery from Himes

Fort Laramie Crude Oil, asserted by Plaintiff RMCO against Defendants GT&T and Dickey, *id.* ¶¶ 310-13; (8) Count VIII: violation of Colo. Rev. Stat. § 18-17-104(3), asserted by Plaintiff RMCO against Defendants Dickey, Hilt, and Himes, *id.* ¶¶ 314-24; *see Stipulation* [#99] (stipulating to dismissal of Defendant GT&T from Count VIII); (9) violation of Colo. Rev. Stat. § 18-17-104(4), asserted by Plaintiff RMCO against Defendants Dickey, Hilt, and Himes, *Am. Compl.* [#47] ¶¶ 325-26; *see Stipulation* [#99] (stipulating to dismissal of Defendant GT&T from Count IX); and (10) Count X: violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 et seq., asserted by Plaintiff RMCO against Defendants GT&T, Dickey, and Himes, *Am. Compl.* [#47] ¶¶ 327-36.   In the present Motions [#63, #65], Defendants contend that Plaintiffs' claims *other than* Count VII: civil theft and Count X: violation of the DTSA should be dismissed in whole or in part pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II.   Standard of Review

### A.   Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it.   Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.   *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1).   Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.   *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).   "The burden of establishing subject-matter jurisdiction is on the

---

based on the allegations and claims asserted against him by RMCO.   Thus, RMCO-H does not assert a claim against Himes . . . ."   *Response* [#72] at 5-6.

party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.* By contrast, with a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id.* at 1003. When reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

**B.      Fed. R. Civ. P. 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 17 F.3d 1226, 1236

–6–

(10th Cir. 1999) (citation omitted).   To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"   *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.   Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."   *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.4d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not shown[n][ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).   *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.   Analysis

**A.      Fed. R. Civ. P. 12(b)(1)**

Defendants raise several arguments implicating the Court's subject matter jurisdiction: (1) whether there is diversity jurisdiction, *see Motion* [#63] at 5; (2) whether there is pendant/supplemental jurisdiction, *see id.* at 5-7; (3) whether either Plaintiff has adequately alleged injuries traceable to Defendant Hilt specifically, *see id.* at 9-10; and (4) whether Plaintiff RMCO-H has standing to assert any claims by adequately alleging an injury-in-fact, *see id.* at 7-9; *Motion* [#65] at 4-7.   The Court begins with the second issue, regarding whether there is pendant jurisdiction.

### 1.   Pendant Jurisdiction

Plaintiffs allege that the Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 based on Count X, violation of the DTSA, 18 U.S.C. § 1836 et seq., asserted by Plaintiff RMCO against Defendants GT&T, Dickey, and Himes.   *Am. Compl.* [#47] ¶¶ 8, 327-36.

Defendant Hilt points out that only state law claims are asserted against him, and he argues that the Court should decline to exercise pendant jurisdiction, also known as supplemental jurisdiction, over these claims pursuant to 28 U.S.C. § 1367(c)(4).   *Motion* [#63] at 5-7.   This subsection of the statute provides: "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if – in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Few cases from the District of Colorado, and none from the Tenth Circuit Court of Appeals, have grappled with the issue of what constitutes "exceptional circumstances" under 28 U.S.C. § 1367(c)(4).   In *Robertson v. U.S. Bank National Association*, No. 19-cv-02909-RM-KMT, 2019 WL 6463923, at *2 (D. Colo. Dec. 2, 2019), the Court noted

–8–

that "[s]upplemental jurisdiction is a doctrine of discretion, not of right," *see Hubbard v. Oklahoma ex rel. Okla. Dep't of Human Servs.*, 759 F. App'x 693, 713 (10th Cir. 2018), and determined that "[t]he record shows this is an exceptional case":

> Specifically, the action now before this court is in its early stages; the removal was filed on October 11, 2019, less than two months ago.  No scheduling conference has been held or substantive orders have been issued.  The Foreclosure Proceeding, however, was filed on or about April 24, 2019 and therefore was pending in state court for about six months before Lender Defendants removed the matter to this court.  In fact, the record discloses that Magistrate Judge Kelle Thomas was ready to hear the Foreclosure Proceeding just before this matter was removed and is well positioned to hear the matter if remanded now in light of Judge Thomas's familiarity with the case.   Moreover, a C.R.C.P. 120 proceeding is uniquely a matter of state court procedural and substantive law over Colorado real property.   As such, the Court adheres to the Tenth Circuit's recognition that federal courts should "generally decline to exercise supplemental jurisdiction when no federal claims remain because 'notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.'"   *Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)).  The Court finds no such reasons here.

In another case, *Long v. Cordain*, No. 13-cv-03475-RM-NYW, 2015 WL 5081624, at *4 (D. Colo. Aug. 28, 2015), the Court declined supplemental jurisdiction because the statute of limitations would not bar the claims in state court, because "the dismissal of the state law claims would still leave this federal forum available for Plaintiffs to litigate the federal claims."   In addition, he noted that, although "allowing the state law claims, along with the federal claims, to go forward before this Court concurrently [with a materially related state court action which was already proceeding] would waste judicial resources, require the parties to litigate the same set of operative facts in two different forums concurrently, and may result in inconsistent or conflicting results," a stay of the federal claims could "obviate[ ]" those results; "[n]onetheless, that begs the question of, once any

stay is lifted upon the resolution of the State Court Action, why Plaintiffs should thereafter be allowed to proceed before this Court with state law claims that have been brought and claims which could have been brought in the State Court Action." *Long*, 2015 WL 5081624, at *4. The *Long* court also noted that "considerations of judicial economy, convenience, and fairness to litigants" did not require the Court to exercise supplemental jurisdiction, given that "[j]udicial economy favors resolving all state law claims in one forum, and, "[a]s for convenience and fairness to the litigants," there was no indication that the discovery conducted to date in the federal case could not be used in the state court action. *Id.*

Finally, in *Hartman v. The Vail Corporation*, No. 07-cv-00193-CMA-BNB, 2009 WL 2514073, at *3 (D. Colo. Aug. 14, 2009), the defendant had argued:

> [B]ecause the loss of consortium claim "stands alone" or is "separate and distinct" the Court should decline jurisdiction over it. For the same reasons the Court finds that Plaintiffs' claims emerge from a common nucleus of operative fact, the Court finds the absence of "exceptional circumstances" precluding the use of supplemental jurisdiction. Despite the absence of exceptional circumstances, the Court must still weigh several factors before deciding whether to exercise supplemental jurisdiction over pendent-party claims like Mr. Hartman's. The Court is mindful of "'considerations of judicial economy, convenience and fairness to litigants' and comity in the federal system." *Sullivan v. Scoular Grain Co. of Utah*, 930 F.2d 798, 803 (10th Cir.1991) (quoting [*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)])). Given that the instant case has been under the auspices of federal jurisdiction since January 2007 and given that trial is scheduled for next month, the Court finds that notions of judicial economy, convenience, fairness, and comity incline it to exercise jurisdiction over Mr. Hartman's loss of consortium claim.

Here, Defendant Hilt argues that there is no nucleus of operative fact sufficient for the Court to exercise supplemental jurisdiction over the claims against him. *Motion* [#63] at 5-7. In part, Plaintiffs allege the following as to Defendant Hilt:

–10–

(1) "The business and affairs of RMCO-H are managed by a Board of Managers. Until June 24, 2019, the Managers were Helms and Dickey, who were appointed by US Shale, and Hilt, who was appointed by Mercuria.   Hilt also was a Vice-President—Midstream at Mercuria. . . ."   *Am. Compl.* [#47] ¶ 20.

(2) "The Limited Liability Company Agreement of RMCO-H (the "RMCO-H Agreement") did not authorize or permit Dickey or Hilt to engage in the tortious and intentional misconduct alleged herein, and does not absolve Dickey or Hilt from liability for such misconduct."   *Id.* ¶ 21.

(3) "In addition to his responsibilities as the Series B Manager of RMCO-H, Hilt was RMCO's primary commercial contact with Mercuria and was responsible for the day-to-day management of that relationship.   Hilt left the employment of Mercuria in September 2019—after Plaintiffs discovered the misconduct alleged herein and terminated Dickey and Himes."   *Id.* ¶ 32.

(4) "On October 31, 2018, as Defendants commenced their scheme to defraud and to engage in the other misconduct alleged herein, a limited liability company owned by Dickey and, on information and belief, Dickey's wife acquired GT&T. . . . Dickey, Hilt, Himes, and unnamed coconspirators then proceeded to use GT&T surreptitiously and unlawfully to misappropriate Plaintiffs' business opportunities, use money of Plaintiffs for the benefit of Defendants, deprive Plaintiffs of the honest and faithful services of RMCO employees, and take confidential and proprietary property, information and material while employed by Plaintiffs (in the case of Dickey and Himes) and while serving as a Manager of RMCO-H (in the

−11−

case of Dickey and Hilt)."   *Id.* ¶ 34.

(5) "Upon information and belief and by January 2019, Hilt had instructed Mercuria employees Kellen Burdic and Bret Techentien to assist GT&T in the origination of crude oil purchase and sale transactions directly with GT&T and not RMCO as had been the practice prior to January 2019."   *Id.* ¶ 36.

(6) The motive behind Defendants' illicit scheme is captured in, among other things, a text message sent by Hilt to Dickey on May 2, 2019, which stated: 'The RMCO first purchase contract with Meti, that is cancellable by either party with 30 days [sic] notice, right?   So, Meti could provide notice anytime as long as I [Hilt] make them comfortable that I have a solution outside of RMCO.   We can start this game with Chris [Helms] real fast.   He will get nothing for that business!   The suspense can stay behind or actually I can make him come up with the cash for the liability taken, if we take the suspense.'"   *Id.* ¶ 39.

(7) "At all times pertinent hereto, RMCO had worked diligently to maintain and to grow its 'first purchase' portfolio.   All of that came to an end in January 2019 when Mercuria employees Kellen Burdic and Bret Techentien, under the direction and instruction of Hilt, began to originate first purchase business for the benefit of GT&T—an 'enterprise' within the meaning of Colorado's Organized Crime Control Act.   As a result of the scheme by Defendants to divert the crude oil purchase and sale business from RMCO to GT&T, RMCO had not added a single new 'first purchase' crude oil customer during the period January 1, 2019, through July 1, 2019."   *Id.* ¶ 45.

(8) "With the intent of diverting the economic value from the purchase of oil produced by Bellaire from RMCO to GT&T, on January 15, 2019, Hilt wrote to Mercuria employees Kellen Burdic and Bret Techentien and said: 'Guys, We should let RMCO purchase at the wellhead and then we buy bulk from them.  These are small producing wells.   We need to get Bill [Dickey] an injection point and value and he will work up the trucking and price for the producer.   Rod.'"   *Id.* ¶ 95.

(10) "Dickey, Himes, and Hilt knew the value of this business and wanted to acquire it for GT&T."   *Id.* ¶ 192.

This list contains only some of the allegations concerning Defendant Hilt's involvement in the events underlying this lawsuit.   *See, e.g.*, *id.* ¶¶ 196, 198, 200, 206, 215, 236.   Although the level of detail of those allegations regarding Defendant Hilt varies somewhat throughout the Amended Complaint [#47], it is obvious that the allegations against him and the claims stemming from those allegations all involve a common nucleus of operative fact, i.e., the asserted misconduct by Defendants in connection with Plaintiffs' company assets and business dealings.

The Court is not persuaded otherwise by Defendant Hilt's citation to *Colorado Department of Public Health and Environment, Hazardous Materials and Waste Management Division v. United States*, No. 17-cv-02223-RM-SKC, 2021 WL 3286589 (D. Colo. Aug. 2, 2021).   *Reply* [#83] at 3-4.   There, the Court determined that it had the "power to hear this case" because there was "more than a loose factual connection" between the state law claims and the federal claim, but when the federal claim was dismissed, it found that, despite the case having "been pending on its docket for some

time," declining to exercise supplemental jurisdiction was appropriate because at least one claim "certainly raises important issues concerning a state law."   *Dep't of Pub. Health & Env't*, 2021 WL 3286589, at *2.   Here, the Court has already found there to be "more than a loose factual connection" given that there is a common nucleus of operative facts. *See id.*   In addition, the Motions [#63, #65] do not seek dismissal of the one federal claim asserted under the DTSA, and so this is not a situation where only state law claims might remain in the case.

While the Court makes no comment in this section regarding whether the allegations mentioned above, along with others from the Amended Complaint [#47], are sufficient to demonstrate standing or to state claims against Defendant Hilt (issues which are addressed below), the Court finds that the exercise of supplemental jurisdiction is appropriate here.   Not only is there a common nucleus of operative fact, but there is no other argument that considerations of judicial economy, convenience, and fairness should dictate otherwise.   Indeed, given the finding that there is a common nucleus of operative fact and a lack of such factors as a parallel state court proceeding or no federal claim, these considerations all militate in favor of the exercise of supplemental jurisdiction over the state claims Plaintiffs assert against Defendant Hilt.

Accordingly, the Court **recommends** that the Motion [#63] be **denied in part** with respect to Defendant Hilt's pendant jurisdiction argument.[3]

### 2.      Standing

---

[3]   Because the Court finds that pendant jurisdiction is appropriate, the Court need not address Defendant Hilt's argument regarding the alternative jurisdictional basis of diversity under 28 U.S.C. § 1332.

"Article III of the Constitution permits federal courts to decide only 'Cases' or 'Controversies.'" *Rio Grande Foundation v. Oliver*, __ F.4th __, __, No. 22-2004, 2023 WL 219186, at *7 (10th Cir. Jan. 18, 2023) (citing U.S. Const. art. III, § 2). "This requires 'a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions.'" *Rio Grande*, 2023 WL 219186, at *7 (quoting *Carney v. Adams*, 141 S. Ct. 493, 498 (2020)). "The 'case-or-controversy' requirement 'is built on separation-of-powers principles and serves to prevent the judicial process from being used to usurp the powers of the political branches.'" *Rio Grande*, 2023 WL 219186, at *7 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). "Although the primary concern is jurisdictional, the case-or-controversy requirement also protects judicial economy, ensuring 'the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake.'" *Rio Grande*, 2023 WL 219186, at *7 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000)).

The doctrine of standing "aim[s] to ensure federal courts stay within Article III's bounds . . . ." *Rio Grande*, 2023 WL 219186, at *7 (citing *Friends of the Earth, Inc.*, 528 U.S. at 189). "'Standing concerns whether a plaintiff's action qualifies as a case or controversy when it is filed . . . .'" *Rio Grande*, 2023 WL 219186, at *7 (quoting *Brown v. Buhman*, 822 F.3d 1151, 1163 (10th Cir. 2016)). "The party invoking federal jurisdiction 'bears the burden of establishing standing as of the time it brought [the] lawsuit and maintaining it thereafter.'" *Rio Grande*, 2023 WL 219186, at *7 (quoting *Carney*, 141 S. Ct. at 499). "'Failure to satisfy the requirements of [the standing] doctrine places a

dispute outside the reach of the federal courts.'"  *Rio Grande*, 2023 WL 219186, at *7 (quoting *Brown*, 822 F.3d at 1164).

"The doctrine of standing requires a litigant to 'prove [1] [it] has suffered a concrete and particularized injury [2] that is fairly traceable to the challenged conduct, [3] and is likely to be redressed by a favorable judicial decision.'"  *Rio Grande*, 2023 WL 219186, at *8 (quoting *Carney*, 141 S. Ct. at 498).   "'A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing.'"  *Rio Grande*, 2023 WL 219186, at *7 (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990)).   "[T]he standing inquiry remains focused on whether the party invoking jurisdiction had a sufficient stake in the outcome when the suit was filed."  *Rio Grande*, 2023 WL 219186, at *9 (citing *Davis v. Fed. Election Comm.*, 554 U.S. 724, 734 (2008); *Friends of the Earth*, 528 U.S. at 180; *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)).

### a.     Injury-in-Fact

The Court turns to Defendants' first standing argument, i.e., whether Plaintiff RMCO-H has standing to assert any claims by adequately alleging an injury-in-fact. *Motion* [#63] at 7-9; *Motion* [#65] at 4-7.[4]

---

[4]   Plaintiffs provide no argument as to Plaintiff RMCO-H's standing to assert claims against Defendant GT&T.   *See Response* [#71] at 4-8; *see also id.* at 4 ("GT&T and Dickey appear to suggest that the claims asserted by RMCO-H are derivative of the claims of RMCO.   However, RMCO-H in fact has standing to assert claims against Dickey in his capacity as a Manager and Officer of RMCO-H.").   As the Court explains in Section III.2.b. below, Plaintiffs' failure to address the argument is grounds for waiver. However, given that the Court's analysis here on whether Plaintiff RMCO-H incurred an injury in fact does not change based on which Defendant asserts the argument, the Court proceeds to analyze the issue in respect to Plaintiff RMCO-H and all three Defendants against whom Plaintiff RMCO-H asserts claims, i.e., Defendants Dickey, Himes,

An injury in fact is "'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Citizens for Constitutional Integrity v. United States*, __ F.4th __, __, No. 21-1317, 2023 WL 142782, at * (10th Cir. Jan. 10, 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).   Here, the parties cite a number of cases regarding when a holding company like Plaintiff RMCO-H incurs an injury in fact.

First, in *In re Beck Industries, Inc.* 479 F.2d 410, 418 (2d Cir. 1973), the Second Circuit Court of Appeals stated: "Where a parent corporation desires the legal benefits to be derived from organization of a subsidiary that will function separately and autonomously in the conduct of its own distinct business, the parent must accept the legal consequences, including its inability later to treat the subsidiary as its alter ego because of certain advantages that might thereby be gained.   In short, the parent cannot 'have it both ways.'"

Plaintiffs cite *Barnes v. Harris*, No. 2:12-CV-1010 TS, 2013 WL 1982182, at *6 (D. Utah May 13, 2013), applying Utah law, for the proposition that an injury occurring at the holding company level is cognizable.   *Response* [#71] at 4-5.   Defendants do not dispute this general proposition but rather argue that Plaintiff RMCO-H incurred no injury *at its level*.   *Reply* [#86] at 3.   The *Barnes* court stated:

> [T]he fact that the Individual Defendants are officers and directors of the Holding Company does not give Plaintiffs the ability to bring claims based on wrongdoing that occurred at the Bank level, regardless of how Plaintiffs word their claims. . . .   Not only did the underlying actions supporting these claims all occur at the Bank level, the harm did as well.   The ultimate harm resulting from these allegations was the Bank's failure.   Certainly, this hurt

and GT&T.

–17–

the Holding Company, but only as a flow-through from the losses incurred by the failure of the Bank.   In short, the Holding Company's investment went sour.   Plaintiffs have failed to allege any distinct or unique damages that were suffered by the Holding Company that were the result of actions taken at the Holding Company level.

2013 WL 1982182, at *5-6.   Thus, as Defendants paraphrase, "claims by a holding company are *not* cognizable where the holding company fails to allege that it suffered any damages that were distinct or unique from those suffered by the subsidiary."   *Reply* [#86] at 3.

Plaintiffs also cite *In re Bank United Financial Corporation*, 442 B.R. 49, 56 (Bankr. Ct. S.D. Fl. 2010), under Florida law, regarding when a holding company has standing. The *Bank United* court stated:

Each director and officer owes fiduciary duties to the respective corporation that he or she serves [when the shareholder of a corporation is a corporation as well].   This obligation does not change even if the shareholder and the subsidiary have common boards.   The issue created by this dual duty when trying to analyze whether a cause of action by a corporate parent against a board member of either the parent or the subsidiary is direct or derivative is how to determine whether the officer or director breached his or her duty to the subsidiary, to the parent, or both.   When the officers and directors are separate, the demarcation is easier to analyze.   However, when the directors and officers of the parent and subsidiary corporations are common, the analysis becomes much more complex.   In what capacity is the individual being sued—in his or her capacity as a director of the subsidiary, the holding company, or both?   Moreover, did the actions complained of breach a duty to the subsidiary, the holding company, or both?

442 B.R. at 55 (internal citations omitted).   The Court further noted that "[a] suit brought by a holding company against its own officers and directors for damages to the holding company arising from breaches of duties owed to the holding company has been long recognized as stating a direct cause of action."   *Id.* (citations omitted).   While the Court

stated that a holding company can bring suit against its own officers for injuries occurring

to the holding company arising from alleged breaches of duties owed to the holding

company, the Court held that a holding company could not bring direct claims against its

own officers, who were also officers of the subsidiary, if the claims concerned "a harm

shared with, or occurring solely at, the subsidiary level."   *Id.* at 59.

Next, Plaintiffs cite *Case Financial, Inc. v. Alden*, No. 1184-VCP, 2009 WL

2581873 (Del. Ch. Aug. 21, 2009), where the parent company, Case Financial, Inc., sued

its former chief executive officer, Mr. Alden, for wrongdoing alleged to have occurred at

the subsidiary level, Case Capital.   The Court stated:

> . . . Alden owed duties directly to Case Financial as a director and officer. .
> . .   "The intentional failure or refusal of a director to disclose to the board a
> defalcation or scheme to defraud the corporation of which he has learned,
> itself constitutes a wrong, unless a recognized privilege against disclosure
> pertains. . . .   A director does breach his duty of loyalty if he knows that the
> company has been defrauded and does not report what he knows to the
> board, at the very least when he is involved in the fraud and keeps silent in
> order to escape detection."   Ultimately, Alden, as a director of Case
> Financial, had a duty not to intentionally or knowingly participate in conduct
> that would injure Case Financial.   Because Alden owed this duty to Case
> Financial directly, Case Financial's ability to pursue a suit against Alden
> directly would not depend, in this sense, on whether the entirety of the
> damage was sustained directly by Case Financial or derivatively through
> Case Capital.   To the contrary, if Alden was substantially certain his
> conduct would injure Case Financial unjustifiably, regardless of how far
> down the causal chain the injury would occur, Alden should have refrained
> from the conduct, especially where he stood to benefit at Case Financial's
> expense, and, at a minimum, should have disclosed those activities to Case
> Financial.

*Case Fin., Inc.*, 2009 WL 2581873, at *7 (internal quotation marks omitted).   Importantly,

the Court's conclusion that the parent had standing to assert direct claims for breach of

fiduciary duty against Mr. Alden was premised on its finding that Mr. Alden "may have

–19–

violated his duties as a director" of the parent "*by improperly misappropriating opportunities*" of the *parent* "by virtue of his actions" at the subsidiary.   *Id.* (emphasis added).

Plaintiffs next cite *Lubin v. Skow*, 382 F. App'x 866, 872-73 (11th Cir. 2010), for the proposition that "failure to inform holding company about misconduct by subsidiary and preventing holding company from taking appropriate action can give rise to a direct cause of action."   *Response* [#71] at 6.   However, the case was more nuanced than Plaintiffs imply.   The *Lubin* court stated:

> We express no opinion about whether Skow or Long might have breached their duties as Holding Company officers by failing to inform the Holding Company board about bank mismanagement or by failing to influence the Holding Company (as sole shareholder of the Bank) to respond to this mismanagement by changing the Bank management.   Neither of these allegations, nor any other allegations regarding these defendant's [sic] conduct as Holding Company officers, appear in the Complaint.

382 F. App'x at 873.   Ultimately, the Court held: "Because the Complaint fails to plead sufficient facts connecting any act or omission by the defendants with a harm to the Holding Company that is distinct from the harm the Holding Company suffered when its investment in the Bank soured, the Complaint states no claim for which the Trustee may recover."   *Id.*

In *Narayanan v. Sutherland Global Holdings, Inc.*, No. 15-CV-6165, 2015 WL 7444638, at *3 (W.D.N.Y. Nov. 23, 2015), the Court stated: "'[I]n a parent and wholly-owned subsidiary context, the directors of the subsidiary are obligated . . . to manage the affairs of the subsidiary in the best interests of the parent.'" (quoting *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988)).   There, the Court denied

the motion to dismiss on the basis of standing, based on a breach of duties owed to the parent. *Narayanan*, 2015 WL 7444638, at *4. Importantly, however, the allegations were that the officer had misappropriated the holding company's funds, not the subsidiary's funds, and that the parent company was therefore injured. *Id.* at *3.

Neither side provides any legal authority under Colorado law or from within the Tenth Circuit Court of Appeals, and, indeed, there appears to be a dearth of such authority. It is clear, though, from a review of the cases discussed above that a holding company has incurred an injury in fact where the injury is not identical to the injury alleged to have been incurred by its subsidiary. In other words, a plaintiff must adequately allege an injury that is unique to the holding company.

Here, Plaintiffs state:

The claims asserted by RMCO-H against Dickey (as Manager and Officer of RMCO-H at the time) in Counts I (fraudulent concealment) and III (constructive fraud) are predicated on his failure to apprise RMCO-H about the substantial misconduct he engaged in as an Officer of RMCO, including his misuse of RMCO-H bank accounts, with the participation of the other Defendants. By failing to so apprise RMCO-H, Dickey [and Hilt] prevented RMCO-H from taking action to address and redress Defendants' misconduct and the mismanagement of RMCO. Accordingly, RMCO-H has a direct cause of action . . . .

Moreover, given Defendants' alleged conspiracy that injured both Plaintiffs (including but not limited to the theft and diversion of moneys from RMCO-H bank accounts (*see* FAC, Doc. #47, ¶¶ 233-50)), and the unjust enrichment of Defendants as result of the alleged misconduct, RMCO-H also has standing to pursue the claims asserted in Counts V (civil conspiracy) and VI (unjust enrichment) [against Dickey and Hilt].

*Response* [#69] at 9-10; *Response* [#71] at 7-8.

Despite Plaintiffs' valiant attempt to show otherwise, the Court cannot find from the allegations in the Amended Complaint [#47] that they have adequately alleged an injury

–21–

in fact to Plaintiff RMCO-H that is distinct from the injury sustained by its subsidiary RMCO, even assuming that Defendants engaged in the alleged misconduct.   Plaintiffs repeatedly allege that Plaintiff RMCO incurred monetary loss, which Defendants do not dispute.   As for Plaintiff RMCO-H, though, Plaintiffs argue that Defendants *could have prevented* that monetary loss had they told Plaintiff RMCO-H about the alleged misconduct.   *See, e.g.*, *Am. Compl.* [#47] ¶ 265.   They argue that Plaintiff RMCO-H's accounts were misused, but they merely allege that this misuse occurred in connection with RMCO's money.   *See, e.g.*, *id.* ¶¶ 233-50, 265.   They have not alleged that Plaintiff RMCO-H lost business opportunities, only that Plaintiff RMCO did.   *See, e.g.*, *id.* ¶¶ 35, 44-45, 49, 55, 71, 79, 94, 105, 116-34, 142-95.   They have not directed the Court's attention to any allegations that Plaintiff RMCO-H lost money, but only that Plaintiff RMCO did.   Thus, even if Defendants *otherwise* may have legally wronged Plaintiff RMCO-H, Plaintiffs have not sufficiently alleged that these actions injured RMCO-H independently from any injury incurred by RMCO.   To the extent Plaintiffs may have been trying to allege some other non-monetary injury to RMCO-H specifically, such as damage to reputation or perhaps some administrative injury in terms of how the company was run, they have failed to direct the Court's attention to allegations adequately supporting that any such injury occurred.   The issue here is not *against whom* Plaintiff RMCO-H may bring claims, such as its own officers, (an issue which more directly concerns the traceability element of standing) but rather, more simply, whether Plaintiff RMCO-H has incurred any legally cognizable injury at all.   Plaintiffs have not directed the Court's attention to allegations in the Amended Complaint [#47] demonstrating an injury that is

legally distinct from the injury alleged to have been incurred by Plaintiff RMCO.  *See Response* [#69] at 6-10; *Response* [#71] at 4-8.

Accordingly, the Court **recommends** that the Motions [#63, #65] be **granted** to the extent that Plaintiff RMCO-H's claims be **dismissed without prejudice** for lack of subject matter jurisdiction based on lack of standing.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (stating that "standing is a jurisdictional mandate," and holding that dismissal for lack of standing must be without prejudice).[5]

### b.    Traceable to the Challenged Conduct

Defendant Hilt argues that Plaintiff RMCO has not alleged injuries traceable to conduct by him.  *Motion* [#63] at 9-10; *Reply* [#83] at 4-5; *see also Rio Grande*, 2023 WL 219186, at *8 (quoting *Carney*, 141 S. Ct. at 498 (stating that standing requires a litigant to prove that the injury in fact "is fairly traceable to the challenged conduct")).

"[T]o show that an injury is 'fairly traceable' to the challenged conduct, a plaintiff must allege 'a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact.'"  *Santa Fe. All. For Pub. Health & Safety v. City of Santa Fe, New Mexico*, 993 F.3d 802, 814 (10th Cir. 2021) (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005)).   "As part of this showing, a plaintiff must establish that its injury was 'not the result of the independent action of some third party not before the court.'"   *Santa*

---

[5] Adoption of this portion of the Recommendation would result in the *complete* dismissal of Count I (fraudulent concealment, asserted by only Plaintiff RMCO-H against Defendants Dickey and Hilt) and Count III (constructive fraud, asserted by only Plaintiff RMCO-H against Defendants Dickey and Hilt) and the *partial* dismissal of Claim V (civil conspiracy, asserted by Plaintiff RMCO against all Defendants and by Plaintiff RMCO-H against all Defendants except Defendant Himes) and Claim VI (unjust enrichment, asserted by Plaintiff RMCO against all Defendants except Defendant Himes) to the extent these two claims are asserted by Plaintiff RMCO-H.

*Fe. All. For Pub. Health & Safety*, 993 F.3d at 814 (citing *Nova Health Sys.*, 416 F.3d at 1156 (quoting *Lujan*, 504 U.S. at 560)).   "This showing, however, does not require a plaintiff to establish that the defendant was the proximate cause of its injury."   *Santa Fe. All. for Pub. Health & Safety*, 993 F.3d at 814 (citing *Nova Health Sys.*, 416 F.3d at 1156). "Nor does it require a showing that a 'defendant's actions are the very last step in the chain of causation.'"   *Santa Fe. All. for Pub. Health & Safety*, 993 F.3d at 814 (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).   "Rather, at the motion to dismiss stage, a plaintiff can satisfy the 'fairly traceable' requirement by advancing allegations which, if proven, allow for the conclusion that the challenged conduct is a 'but for' cause of the injury."   *Santa Fe. All. for Pub. Health & Safety*, 993 F.3d at 814 (citing *Petrella v. Brownback*, 697 F.3d 1285, 1293 (10th Cir. 2012) (citing *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 74-78 (1978))).

Here, Defendant Hilt argues that "[t]he allegations specifically naming Hilt are distinct because they fail to factually allege Hilt took action in an individual capacity." *Motion* [#63] at 9 (citing *Am. Compl.* [#47] ¶ 34).   He notes that he was Mercuria's (one of the two members of RMCO-H) appointee to the Board of Managers.   *Motion* [#63] at 9 (citing *Am. Compl.* [#47] ¶ 20).   He is listed in the RMCO-H Agreement as the "Initial Series B Designee."   *Motion* [#63] at 9 (citing *Ex. A* [#63-1] at 63).[6]   Pursuant to the

---

[6] When considering a motion to dismiss, the Court must usually disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment.   *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, the Court may consider documents outside of the complaint which are pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).   *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000).

RMCO-H Agreement, Defendant Hilt's grant of authority on the Board of Managers was at the direction and explicit consent of RMCO-H's member, and Defendant Hilt's employer, Mercuria.   *Motion* [#63] at 9 (citing *Ex. A* [#63-1] § 2.4).

Defendant Hilt further argues that Plaintiffs fail to provide the Court with any concrete allegations that Defendant Hilt's conduct resulted in harm to Plaintiff RMCO. *Motion* [#63] at 9.   He notes that the Amended Complaint [#47] generalizes conduct by "Defendants" and "Defendants' unlawful scheme."   *Motion* [#63] at 9 (citing *Am. Comp.* [#47] ¶¶ 34, 68, 70, 92, 94).   He points out that, to the extent that he is specifically named, it is only "upon information and belief."   *Motion* [#63] at 9 (citing *Am. Compl.* [#47] ¶¶ 36, 196, 198, 206, 215).   As but one example, Defendant Hilt discusses Plaintiffs' allegations that business was diverted from Plaintiff RMCO to Defendant GT&T, but that this conduct is alleged to have been that of Defendants Dickey and Himes, not Defendant Hilt, and that Defendant GT&T was Defendant Dickey's company, with no mention of Defendant Hilt in connection with Defendant GT&T.   *Motion* [#63] at 9 (citing *Am. Compl.* [#47] ¶ 34).

Plaintiffs provide no responsive argument with respect to Plaintiff RMCO's standing to assert its four claims (Count V: civil conspiracy; Count VI: unjust enrichment; Count VIII: Colo. Rev. Stat. § 18-17-104(3); Count IX: Colo. Rev. Stat. § 18-17-104(3)) against Defendant Hilt.   *See Response* [#69] at 6-10.   Rather, the entirety of their response regarding standing focuses on Plaintiff RMCO-H's standing.   *See id.*   The District Judge presiding over this case has repeatedly held that a party waives any argument where it fails to "meaningfully argue, or cite any authority," on the issue.

*Copper Creek Inc. v. State Farm Fire & Cas. Co.*, No. 21-cv-01603-NYW-MEH, 2022 WL 17454493, at *5 (D. Colo. Dec. 6, 2022) (citing *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.")); *see also White v. Baldridge*, No. 21-cv-02937-NYW-STV, 2022 WL 17751247, at * (D. Colo. Dec. 19, 2022) ("Plaintiff did not raise this argument in response to the Motion to Dismiss, and thus, this argument has been waived." (internal docket citation omitted) (citing *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1130 (D. Colo. 2019)).

In fact, the District Judge has held that this rule applies in the precise context before the Court here, where a defendant challenges standing but the plaintiff fails to respond to that challenge.   *Cuesta v. SMT Holdings LLC*, No. 21-cv-03094-NYW, 2022 WL 15516990, at *7 (D. Colo. Oct. 27, 2022) ("Plaintiff's failure to respond to Defendant's standing challenge warrants dismissal of Plaintiff's sole claim against Resolute Brewing under Count II.") (citing *Tyler v. U.S. Dep't of Educ. Rehab. Servs. Admin.*, 904 F.3d 1167, 1175 n.4 (10th Cir. 2018) (finding the plaintiff waived any argument that it had standing to pursue a claim on behalf of another person where the plaintiff failed to address the issue in any of its briefing, even after an intervening party argued lack of standing in his response brief); *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 552 (10th Cir. 2016) ("[T]he plaintiffs don't argue on appeal that [one of the plaintiffs] had standing. . . .   Thus, the plaintiffs have waived that argument."); *Energy & Env't Legal Inst. v. Epel*, No. 11-cv-00859-WJM-BNB, 2014 WL 1715209, at *6 (D. Colo. May 1, 2014) ("Because Plaintiffs bear the burden of showing standing, their failure to separately address their standing as

to each claim is alone reason to dismiss the claims . . . ."); *Hamlin v. Dep't of Health & Human Servs.*, CIV-15-1030-R, 2016 WL 247587, at *3 (W.D. Okla. Jan. 20, 2016) (finding the plaintiff's failure to respond to the defendants' contentions regarding standing—wherein the defendants "note[d] that it is speculative that some unknown person will at some unknown time in the future steal Plaintiff's identity and use his stolen identity to receive medical care"—warranted dismissal)).

Given the substance of Defendant Hilt's non-bare-bones argument that any injury in fact incurred by Defendant RMCO is not fairly traceable to any challenged conduct by Defendant Hilt, given Plaintiff RMCO's failure to provide any response whatsoever to this argument, and given that Plaintiff RMCO bears the burden of showing standing, the Court finds that Defendant Hilt's Motion [#63] seeking dismissal of Plaintiff RMCO's claims against him should be granted.

Accordingly, the Court **recommends** that Defendant Hilt's Motion [#63] be **granted** to the extent that Count V: civil conspiracy, Count VI: unjust enrichment, Count VIII: Colo. Rev. Stat. § 18-17-104(3), and Count IX: Colo. Rev. Stat. § 18-17-104(3)) all be **dismissed without prejudice in part** to the extent they are asserted by Plaintiff RMCO against Defendant Hilt.

**B.    Fed. R. Civ. P. 12(b)(6)**

**1.    Claims VIII and IX: COCCA**

Defendant GT&T, Dickey, and Himes argue that Plaintiffs' two COCCA claims are barred by the statute of limitations.[7]   *Motion* [#65] at 12-14; *see also Joinder* [#64] at 2

---

[7]   Defendant Hilt also asserts this argument, but the Court has already recommended dismissal

(Defendant Himes joining in Defendant Hilt's argument in Motion [#63]); *Joinder* [#66] at 3-4 (Defendant Himes joining in Defendants GT&T and Dickey's argument in Motion [#65]).

There appear to be some differing interpretations of the statute of limitations in connection with COCCA claims.   Defendants cite cases holding that COCCA claims are subject to a two-year limitations period.   *Motion* [#63] at 17-18; *Motion* [#65] at 12-14. Plaintiffs, while acknowledging Defendants' legal authority, point to cases holding that COCCA claims are subject to a *five*-year limitations period instead.   *Response* [#71] at 14-16.

In support of Plaintiffs' five-year argument, they point to Colo. Rev. Stat. § 13-80-103.8, which is titled "Limitation of civil forfeiture actions related to criminal acts."   The precise subsection to which they point states: "(1) The following actions shall be commenced within five years after the cause of action accrues, and not thereafter: . . . (d) All civil actions brought pursuant to article 17 of title 18, C.R.S. . . ."   In *Goodwin v. Bruggeman-Hatch*, No. 13-cv-02973-REB-MEH, 2014 WL 4723882, at *5 (D. Colo. July 24, 2014), the Court stated, without analysis, that the COCCA claim was "governed by a five-year statute of limitations," citing Colo. Rev. Stat. § 13–80–103.8(1)(d).

In addition, Plaintiffs cite *Clementson v. Countrywide Financial Corporation*, No. 10-cv-01956-WYD-KMT, 2011 WL 1884715, at *10 (D. Colo. Jan. 27, 2011), *aff'd Clementson v. Countrywide Fin. Corp.*, 464 F. App'x 706, 712 n.2 (10th Cir. 2012), where

---

of all claims against him based on standing.   *See Motion* [#63] at 17-18.   To the extent such recommendation is not adopted in full by the District Judge, the following analysis applies to Claims VIII and IX against Defendant Hilt as well.

the Court stated, without analysis, that "Plaintiff's seventh claim, alleging violations of the COCCA, is subject to a five-year limitations period, and accrues "'at such time as the alleged offense or conduct giving rise to the claim was discovered.'" (citing Colo. Rev. Stat. § 13-80-103.8(1)(d); Colo. Rev. Stat. § 13-80-103.8(2)).   In affirming the underlying decision, the Tenth Circuit Court of Appeals merely stated in a footnote, without analysis, that, "[e]xcept for his COCCA claim for which a five-year statute of limitations applied, *see* Colo. Rev. Stat. § 13–80–103.8(1)(d), (2), Mr. Clementson's claims were subject to two— or three-year statutes of limitation."   *Clementson*, 464 F. App'x at 712 n.2.   It does not appear, however, that this issue had actually been appealed to the Tenth Circuit, given that the COCCA claim was dismissed not based on the statute of limitations but, rather, for failure to state a claim.

Defendants, in arguing for a two-year statute of limitations, cite Colo. Rev. Stat. § 13-80-102, which provides in relevant part: "(1) The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, must be commenced within two years after the cause of action accrues, and not thereafter: . . . (i) All other actions of every kind for which no other period of limitation is provided . . . ." *Reply* [#86] at 11.

In *Todd Holding Co. v. Super Valu Stores*, 874 P.2d 402, 405 (Colo. App. 1993), the Colorado Court of Appeals noted that, while there is "a specific statute of limitations for forfeiture actions" under COCCA, otherwise "no specific statute of limitations is applicable."   The Court also noted that "the COCCA statute evinces a legislative intent that it be considered remedial and not penal in nature."   *Todd Holding Co.*, 874 P.2d at

405.   In *F.D.I.C. v. Refco Group, Ltd.*, 989 F. Supp. 1052, 1078 (D. Colo. 1997), the Court cited the underlying trial court decision in *Todd Holding Co.*, stating: "Because there is no express statute of limitations within COCCA, the two year general limitation of actions period established by Colorado Revised Statutes § 13–80–102(1)(i) (1997) applies."   In *Grubka v. WebAccess International, Inc.*, 445 F. Supp. 2d 1259, 1270 (D. Colo. 2006), *amended* No. 05-cv-02483-LTB-OES, 2006 WL 2527815 (D. Colo. Aug. 31, 2006), the Court cited *Refco Group, Ltd.*, in stating: "The two-year statute of limitations for a COCCA claim arising out of the Series A offering expired on December 1, 2002."   In *Rupnow v. Panio*, No. 16-cv-0-813-WJM-MEH, 2017 WL 818664, at *3 (D. Colo. Mar. 2, 2017), the parties did not contest that the applicable statute of limitations for COCCA violations was two years, pursuant to Colo. Rev. Stat. § 13–80–102(1)(i).

Most recently, in *Scolari v. Compass Health Systems*, No. 2019CV31128, 2021 WL 6752910, at *4-5 (Colo. Dist. Ct. Larimer Cnty. Dec. 16, 2021), a Colorado trial court noted the dissonance in legal authority (including one case holding that a four-year statute of limitations applied, which no party here has asserted) but ultimately determined that the two-year period was correct under the circumstances of the case.   The Court stated:

> First, C.R.S. § 13-80-103.8(1)(d) is, by its plain text, narrow in scope.   The statutes [sic] title is limitationin [sic] of *civil forfeiture actions* related to criminal acts[.]"   *Id.* (emphasis added).   The statute does mandate that "[a]ll civil actions brought pursuant to article 17 of title 18" have a five-year statute of limitations.   However, the text of the body must be read in the context of the statutory title.   C.R.S. § 18-17-106(2), the civil remedies provision of COCCA, allows for the state to conduct civil forfeiture proceedings for COCCA violations.   Here, Plaintiff has not argued, and could not argue, that they are entitled to this remedy under COCCA. Accordingly, because § 13-80-103.8(1)(d) applies only to actions in civil forfeiture, the two-year catch-all applies under these facts.   Reading otherwise would render the legislative title meaningless.   *See Shelter Mut.*

> *Ins. Co. v. Mid-Century Ins. Co.*, 246 P.3d 651, 661 (Colo. 2011) (citing *Zab Inc. v. Berenergy Corp.*, 136 P.3d 252, 255 (Colo. 2006)) (holding that courts must "consider the statutory scheme as a whole to give a consistent, harmonious, and sensible effect to all its parts.")
>
> Second, the Court's holding is informed by the comparative uniqueness of § 13-80-103.8(1)(d).   COCCA is substantially similar to 18 U.S.C. § 1962 et. seq. (the federal Racketeer Influenced and Corrupt Organization (RICO) Act), and to many state RICO-adjacent laws.   Many states impose a five-year statute of limitations under their statutes.   *See* G. Robert Blakely, *Time Bars: Rico-Criminal and Civil-Federal and State*, 88 N.T.D.L.R. 1581, 1685-86 (2013).   Those that do not have a five-year statute of limitations generally default to the state catch-all.   *Id.* at 1687.   The General Assembly's decision to place the five-year statute of limitations under the title related only to civil forfeiture, instead of following the paths taken by other, substantially similar statutes, is evidence that the Colorado provision is intended to be distinct and narrow.
>
> Third, the Court's holding is informed by the Colorado Court of Appeals' opinion in *Todd Holding Co. v. Super Valu Stores, Inc.*, 874 P.2d 402, 405 (Colo. App. 1993).   In *Todd Holding*, the court applied the general accrual statute.   *See* C.R.S. 13-80-108.   Implicitly, *Todd Holding* recognized that § 13-80-103.8(1)(d), which was effective at that time, did not apply to those COCCA claims.   *See Todd Holding*, 874 P.2d at 405 (applying the accrual statute that applies to actions limited by § 13-80-102(1) rather than the accrual language in § 13-80-103.8(1)(d)).   Accordingly, the Court finds the implicit holding in *Todd Holding* to be persuasive authority in finding that the two-year statute of limitations applies.

*Scolari*, 2021 WL 6752910, at *5.   For the reasons enunciated by the *Scolari* court, this Court agrees that the two-year statute of limitations is applicable to Plaintiffs' claims asserted under COCCA, neither of which has any relationship to civil forfeiture, as would be necessary for the five-year statute of limitations to apply.

Plaintiffs do not argue that their claims would be timely under a two-year statute of limitations.   *See Response* [#71] at 14-16.   Indeed, this lawsuit was filed on March 16, 2022, *see Compl.* [#1], and Defendants thoroughly canvas the allegations in the Amended Complaint [#47] to show that both the first COCCA claim (Count VIII) and the second

COCCA claim (Count IX) began to accrue, at the latest, in February 2020.   *Motion* [#65] at 12-14.   Thus, the Court finds that Plaintiffs claims' under COCCA are time-barred.

Accordingly, the Court **recommends** that the Motion [#65] be **granted** to the extent that Plaintiffs' Count VIII and Count IX against Defendants GT&T, Dickey, and Himes be **dismissed with prejudice**.   *See, e.g.*, *Gee v. Pacheco*, 627 F.3d 1178, 1181 (10th Cir. 2010) (affirming dismissal with prejudice of claims barred by statute of limitations).

### 2.    Duplicate Claims

Next, Defendants argue that Count II: fraudulent concealment and Count IV: constructive fraud, both asserted by Plaintiff RMCO against Defendants Dickey and Himes, are duplicative of one another.   *Motion* [#65] at 10-11; *see also Joinder* [#66] at 3 (Defendant Himes joining in Defendants GT&T and Dickey's argument in Motion [#65]). They therefore ask that Count IV be dismissed.

Defendants "do not dispute that [fraudulent concealment and constructive fraud] are legally distinct claims."   *Reply* [#86] at 9.   The crux of their argument, instead, "is that Plaintiffs did not plead them that way."   *Id.* In support, they cite *Doe through Doe v. Brighton School District 27J*, __ F. Supp. 3d __, __, No. 19-cv-00950-WJM-NRN, 2020 WL 886193, at *12-13 (D. Colo. Feb. 24, 2020), *as amended* (Mar. 2, 2020) (quoting *Sw. re, Inc. v. G.B. Invs. Reinsurance Co.*, No. CIV 10-856 BB/WPL, 2011 WL 13114921, at *1 (D.N.M. June 17, 2011)).   *Motion* [#65] at 10.   In *Doe*, the Court stated:

> Because Plaintiff's sex discrimination claim is premised on deliberate indifference to sexual harassment, Claim 3 appears to be wholly duplicative of Claim 4.   Indeed, the parties discuss Claims 3 and 4 together, and seemingly both understand deliberate indifference to sexual harassment to

–32–

be a central element of the claims.   And Plaintiff does not appear to allege any form of sex discrimination apart from deliberate indifference to sexual harassment.   Accordingly, the Court will dismiss Claim 3 in its entirety.

2020 WL 886193, at *13 (internal docket citations omitted).

In *Southwest re, Inc.*, cited by the *Doe* court, the Court noted that "federal courts have dismissed claims pursuant to Fed. R. Civ. Pro. 12(b)(6) when those claims are duplicative of other claims in the suit."   2011 WL 13114921, at *1.   In discussing whether "the New Mexico state law claim of money" was duplicative of "the New Mexico state law claim of unjust enrichment," the Court stated:

> . . . Fed. R. Civ. Pro. 12(f) allows courts to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."   Claims are duplicative when they are substantially the same as other claims in the suit. They may also be duplicative where the plaintiff would not be able to recover damages under the duplicative theory that are not available under the other theories.   If the substance of the claim is already asserted in another claim, then the second claim is duplicative.

*Id.* at *1-2 (internal citations omitted).

Although these claims are similar, the Court is not convinced that one of these claims should be dismissed as duplicative at this early stage of the case.   The parties agree that the factual and legal elements of the claims are not the same.   *Response* [#71] at 12; *Reply* [#86] at 7.   Through discovery, Plaintiff RMCO may be able to gather evidence in support of all the elements of one of these claims and but not in support of all the elements of the other claim.   It *may* be appropriate to dismiss one of these claims as duplicative later in this litigation, particularly given, as Plaintiff RMCO points out, that "both appear to seek exactly the same damages—the prayers for relief on both claims are identical."   *Motion* [#65] at 11.   To the extent Defendants argue that the allegations

−33−

underlying each claim are the same, and therefore that the elements of one or the other may not have been adequately alleged, the appropriate course of action would have been to argue that Plaintiff RMCO failed to state a claim on which relief may be granted by reciting the elements of the claim and pointing out which element(s) are left unsupported by the allegaitons in the Amended Complaint [#47].   This is not the same as their argument that the claims are duplicative.

Accordingly, the Court **recommends** that the Motion [#65] be **denied** at this time to the extent Defendants argue that Count II and Count IV are duplicative and that Count IV should therefore be dismissed.

### 3.   RMCO-H Agreement

Defendants assert that some of Plaintiffs' claims are barred by section 6.9(a) of the RMCO-H Agreement, which is titled "Waiver of Fiduciary Duties; Limitation of Liability."   *Motion* [#65] at 7.   The Court finds that there are procedural deficiencies in Defendants' argument which prevent the Court from analyzing it on the merits at this time.

In short, Defendants' argument is premature because it assumes the unassailability of a fact—the applicability and enforceability of section 6.9(a) of the RMCO-H Agreement—without any discovery having occurred.   Moreover, Defendants' argument here is not specific enough for the Court to reach a conclusion as to what *precisely* Defendants are seeking to have dismissed.   In the title to this section, Defendants state that "Plaintiffs' First Through Sixth . . . Claims, *in Part*, Are Barred Under the RMCO-H Agreement."   *Motion* [#65] at 7 (emphasis added).   They proceed to state, for example: (1) "[t]he first and second claims for Fraudulent Concealment, and third and

fourth claims for Constructive Fraud, do not allege any fraudulent representation with particularity, but rather only fraudulent omissions, *most of which* involve Defendants' purported misappropriation of Plaintiffs' business opportunities and unfair competition," *Motion* [#65] at 9 (emphasis added); (2) "[s]imilarly, Plaintiffs' fifth claim for Civil Conspiracy, based on the allegations it incorporates by reference (FAC ¶ 301), also relies *in large part* on this alleged unfair competition, *id.* (emphasis added); (3) "Plaintiffs' sixth claim for Unjust Enrichment relies *almost entirely* on Defendants' misappropriation of business (FAC ¶ 307), but Mr. Dickey was permitted to consider his own interest and compete under the RMCO-H Agreement," *id.* (emphasis added); (4) "[t]hus, claims one through six . . . must be dismissed *at least in part* under the RMCO-H Agreement," *id.* at 10 (emphasis added).   These nebulous statements do not permit the Court to determine with any degree of certainty what specific parts of the claims would be dismissed and, just as importantly, if not more so, which specific parts of the claims would remain in this lawsuit for adjudication.

The relevant Reply [#86] does not adequately clear this murkiness.   Defendants state: (1) "[r]ather, [Mr. Dickey] argued that *to the extent Plaintiffs' claims are based on duties which Section 6.9(a) disclaims*, those claims fail because there was no duty to be tortiously breached (intentionally or not) to begin with," *Reply* [#86] at 6; (2) "[t]hus, *to the extent Plaintiffs' claims are based on allegations that Mr. Dickey misappropriated business opportunities or engaged in unfair competition*, that alleged conduct was not tortious in the first place, as Section 6.9(a) eliminated any duty not to engage in such conduct," *id.* at 6-7 (emphasis added); (3) "Plaintiffs' first and second claims for fraudulent

–35–

concealment, third and fourth claims for constructive fraud, fifth claim for civil conspiracy, [and] sixth claim for unjust enrichment, . . . *to the extent they are based on predicate acts involving Mr. Dickey's alleged competition with RMCO*, all are *primarily premised* on Mr. Dickey's alleged misappropriation of business opportunities and unfair competition, and failure to inform Plaintiffs of those alleged actions, which are duties waived under Section 6.9(a)," *id.* at 7 (emphases added) (footnote omitted); (4) "[t]hus, *to the extent these claims rely on alleged unfair competition and failure to inform Plaintiffs about it*, those claims are not actionable," *id.* (emphasis added).   These arguments are not well-suited to a motion to dismiss, as they are based on mere assumptions about which facts underlie the claims asserted.   To the extent that Plaintiffs have properly alleged *some* facts which support their claims, those claims are not subject to dismissal for failure to state a claim.   *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain *sufficient* factual matter, accepted as true, to state a claim to relief that is plausible on its face." (emphasis added) (internal quotation marks omitted)).   Here Defendants essentially attempt to get around that fundamental concept by arguing that IF the claims are based solely on the "fact" Defendants assert, THEN the claims cannot stand.   But Defendants' attempt to derail assertion of the claims based on the fact they like—a specific provision of the RMCO-H Agreement—is premature because discovery has not been completed and other facts which may bear on the applicability and enforceability of the RMCO-H Agreement have not been adduced.   Indeed, no one knows how the provision on which Defendants rely will emerge from discovery, and more specifically, the extent to which it—or the entire Agreement—may be impacted by additional facts about the parties'

course of conduct.   The Court is not inclined to engage in speculative narrowing of the claims at this early stage of the litigation, especially when ample authority concludes that the mere possibility that a fact may undermine a portion of a claim does not mean that a plaintiff has failed to state a viable claim.   *See, e.g.*, *Durham v. Lappin*, No. 05-cv-01282-MSK-MEH, 2006 WL 2724091, at *6 n.10 (D. Colo. Sept. 21, 2006) ("Fed. R. Civ. P. 12(b)(6) does not contemplate dismissal of portions of claims, and it is difficult to say, at this early stage of the litigation, whether the Plaintiff's statute of limitations may be subject to legal doctrines that might adjust the date upon which it commences.   It is sufficient to note that at least some of the conduct complained of is timely . . . .").   Defendants' inability to clearly delineate which portions of which claims should be dismissed supports the Court's conclusion here.

Accordingly, the Court **recommends** that the Motion [#65] be **denied** at this time to the extent Defendants argue that certain claims are partially barred under the RMCO-H Agreement.

### 5.    Conspiracy

Defendants GT&T, Dickey, and Himes argue that Plaintiffs' Count V: civil conspiracy "fails if the other claims fail" because conspiracy is a derivative claim requiring cognizable underlying claims.   *Motion* [#65] at 17; *see also Joinder* [#66] at 3 (joining in Defendants GT&T and Dickey's argument on this issue).   In its Response [#72], Plaintiffs clarified that "Count V alleges a claim for civil conspiracy by Plaintiffs against Defendants based on the fraudulent concealment claim asserted in Count I (RMCO-H v. Dickey and Hilt) and the fraudulent concealment claim asserted in Count II (RMCO v. Dickey and

Himes).”  *See* [#72] at 5.  Because the Court does not recommend that those underlying claims be dismissed, in the absence of any other argument, the Motion [#65] should be denied on this issue.

Accordingly, the Court **recommends** that the Motion [#65] be **denied in part** to the extent Defendants GT&T, Dickey, and Himes seek dismissal of Plaintiffs' Count V: conspiracy.

### IV.  Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the Motion [#63] be **GRANTED** to the extent that all claims against Defendant Hilt be **DISMISSED without prejudice** for lack of subject matter jurisdiction.

IT IS FURTHER **RECOMMENDED** that Defendant GT&T and Dickey's Motion [#65] be **GRANTED in part and DENIED in part**.[8]

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo

---

[8]  Should this Recommendation be adopted in full, the following claims, all asserted by Plaintiff RMCO only, will remain: (1) Count II: fraudulent concealment, against Defendants Dickey and Himes; (2) Count IV: constructive fraud, against Defendants Dickey and Himes; (3) Count V: civil conspiracy, against Defendants GT&T, Dickey, and Himes; (4) Count VI: unjust enrichment, against Defendants GT&T, Dickey, and Himes; (5) Count VII: civil theft, against Defendants GT&T and Dickey; (6) Count X: violation of the DTSA, against Defendants GT&T, Dickey, and Himes. Further, Plaintiff RMCO-H and Defendant Hilt would be dismissed because all claims asserted by or against them would be dismissed.

review of the Recommendation by the District Judge, Fed. R. Civ. P.   72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.   *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

DATED: February 1, 2023

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

–39–